BRAUN v BOARD OF TRUSTEES OF THE POLICEMEN &
FIREMEN RETIREMENT SYSTEM, CITY OF SAGINAW

Docket No. 57321. Submitted July 15, 1982, at Lansing.—Decided
October 7, 1982. Leave to appeal applied for.

Raymond J. Braun and Peter Pendell were fire fighters employed
by the City of Saginaw. Both received nonduty disability retire-
ments from the city and were awarded total disability benefits
by the Bureau of Workers' Disability Compensation. Braun and
Pendell thereafter applied for duty disability retirement bene-
fits from the city and received retroactive lump sum payments
of workers' compensation benefits from the city. The city then
demanded repayment of a portion of the lump sum payment
each man had received on the basis that the city's pension
ordinance provided that workers' compensation benefits paid or
payable to a member of the city's retirement system must be
set off against any pension payable to that member. Braun and
Pendell repaid the sums demanded. They then appeared before
the Board of Trustees of the Policemen and Firemen Retire-
ment System, City of Saginaw (board) and submitted documents
pertaining to their applications for duty disability retirement
benefits. The board deferred action on the applications. Three
months later, the board voted to "receive and file" the applica-
tions. Braun and Pendell thereafter filed suit against the board
in Saginaw Circuit Court seeking reimbursement of the monies
returned by them to the city and directing the trustees of the
board to accord them duty disability retirement status. The
court, Joseph R. McDonald, J., issued a writ of mandamus
ordering defendant to award plaintiffs the status of duty dis-
ability retirees for purposes of defendant's pension plan. Fur-
ther, the court opined that the city should return to plaintiffs
the amounts of money the plaintiffs had repaid to the city and
that, while the city should return that money, it could look to
other funds for satisfaction or withhold further pension benefits
until an amount of overpayment received by plaintiffs had been

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 515, 516.
[2] 4 Am Jur 2d, Appeal and Error §§ 502, 503.

recaptured. Judgment was entered implementing the first two parts of the court's opinion, but the later part was never reduced to a judgment. Defendant appeals the trial court's judgment on the first two matters and plaintiffs appeal the court's decision as to the recapture of overpayment of benefits. *Held:*

1. The trial court erred in holding that defendant improperly demanded and improperly received repayment of a portion of the lump sum payment each plaintiff received.

2. Mandamus ordering that plaintiffs be classified for duty disability should not have been issued. The board did not act capriciously or arbitrarily in receiving and filing plaintiffs' applications.

3. The trial court erred in awarding to plaintiffs the sums of money plaintiffs had returned to the city and in ordering defendant to accord plaintiffs the status of duty disability retirants. The judgments entered to said effect are set aside and vacated.

4. The issue of whether the court erred in determining that defendant could look to other funds or withhold further pension benefits until any amount of overpayment of benefits received by plaintiffs had been recaptured is not properly before the Court of Appeals because the trial court never reduced that portion of its opinion to judgment and because, due to the decision on appeal, the issue is now moot.

The judgments in favor of plaintiffs are vacated and set aside.

1. WORKERS' COMPENSATION — ELIGIBILITY FOR BENEFITS — DISEASES.

A claimant, in order to be eligible for workers' compensation benefits due to either a disorder or injury, must show that his disability arose out of and in the course of employment and that the employment aggravated, accelerated, or combined with any disease the claimant may have had to produce the disability.

2. COURTS — JUDGMENTS — OPINIONS — APPEAL.

Courts speak through their judgments; mere opinions are not reviewable.

*van Benschoten, Hurlburt & van Benschoten, P.C.* (by *Lawrence A. Hurlburt),* for plaintiffs.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Bruce L. Dalrymple),* for defendant.

Before: Allen, P.J., and Cynar and R. B. Martin,* JJ.

Per Curiam. Defendant appeals as of right the trial court's April 7, 1981, writ of mandamus ordering defendant to award plaintiffs, retired fire fighters, the status of duty disability retirees under defendant's pension plan. A nonjury trial was held on November 6, 1979, on stipulated facts and depositions. The trial judge issued an opinion on March 18, 1981. Plaintiffs appeal that portion of the trial court's order ruling that defendant could seek reimbursement of allegedly overpaid pension benefits from plaintiffs. On April 27, 1981, the trial court issued an order staying proceedings pending this appeal.

Because of the similarity of the parties and the issues involved, this cause is released simultaneously with our opinion in *Bannan v City of Saginaw.*[1]

Both plaintiffs were employed as fire fighters by defendant. Plaintiff Braun retired on February 20, 1973, as a nonduty.disability retiree because of a psychiatric disability. The Bureau of Workers' Disability Compensation (bureau) awarded Braun benefits for total disability. Plaintiff Pendell was retired on November 21, 1975, as a nonduty disability retiree because of a heart condition. The bureau awarded him benefits for total disability. The bureau's decision with respect to both plaintiffs became final on or about July 27, 1977, and defendant did not appeal.

Braun and Pendell applied for duty disability retirement benefits on August 8, and July 8, 1977,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Bannan v City of Saginaw,* 120 Mich App 307; 328 NW2d 35 (1982).

respectively, pursuant to §§ 123.1 and 124.2 of the Saginaw Administrative Code.

On or about August 5, 1977, defendant, under the decision and order of the bureau, made retroactive lump sum payments of workers' compensation benefits to each plaintiff computed from the date of plaintiffs' respective disabilities. Braun received $26,045.60 and Pendell received $11,890.46. The sums so received were deposited in plaintiffs' attorney's trustee account.

On September 12, 1977, defendant demanded that Braun pay back to the city $15,002.30 and Pendell pay back to the city $10,522.65. The demand for repayment was based on § 129 of the city's pension ordinance which provides that any workers' compensation benefits paid or payable to a member retirant "shall be offset against any pensions payable to such member". During the period of time encompassed by the workers' compensation benefits, Braun and Pendell received nonduty retirement pension benefits amounting, under § 129, to overpayments of $15,002.30 and $10,522.65, respectively. Both plaintiffs were advised they could either reimburse the city in the lump sums involved or have the entirety of their ongoing pension payments offset until the respective amount of overpayment has been recaptured. On November 28, 1977, plaintiffs repaid the sums demanded. Repayment was made in a lump sum from funds on deposit in plaintiffs' attorney's account.

On January 18, 1978, both plaintiffs, by and through legal counsel, appeared before defendant board and submitted documents pertaining to their applications for duty disability retirement benefits. Defendant board then and there deferred action on the pending applications and requested

that a representative from the city attorney's office attend the next meeting of defendant board in order "to discuss the issues" presented by the applications. Defendant board met in the city manager's office in the City Hall, April 19, 1978, and discussed the pending applications. The records of the pension board do not show any notice to plaintiffs or their counsel. At the meeting the plaintiffs' applications and supporting data were reviewed, following which, on motion made by the city manager, the board "voted to receive and file" the subject applications.

In July, 1978, plaintiffs filed a complaint in circuit court seeking reimbursement of the monies returned by them to the city and directing the trustees of defendant board to accord them duty disability retirement status. On March 18, 1981, the trial court issued its opinion deciding:

(1) That because the eligibility standards under the Worker's Diability Compensation Act and the pension ordinance of the city are the same, the city could not come to a different conclusion, and therefore, the court would sign an order requiring defendant to accord plaintiffs the status of duty disability retirants and pay pension benefits in accordance therewith.

(2) That the overpaid pension benefits constituted a "debt" owed by plaintiffs to the city, which the city could not touch under § 821(1) of the Worker's Disability Compensation Act, MCL 418.821(1); MSA 17.237(831)(1). Therefore, the court indicated that it would sign an order awarding plaintiffs the sums of money they had returned to the city.

(3) That while defendant had no right to reimbursement out of accrued workers' compensation benefits, defendant could look to other funds for

satisfaction or withhold further pension benefits until the entire overpayment had been recaptured.

On April 7, 1981, judgment was entered implementing the trial court's decision as to items (1) and (2). Item (3) was never reduced to judgment. Defendant appeals the judgment as to items (1) and (2). Plaintiffs, as cross-appellants, appeal the court's decision as to item (3).

In Part I of this opinion we address the issues raised on plaintiffs' complaint for reimbursement and for classification as duty disability retirants. Part II of the opinion speaks to plaintiffs' cross-appeal.

I

In *Bannan v City of Saginaw, supra,* this Court was confronted with the question of whether the offset of workers' compensation benefits mandated by § 129 of the ordinance applied to both nonduty disability pensions and duty disability pensions. After analyzing the several sections involved, we rejected the city's contention that § 129 mandates that *all* retiree pensions, whether nonduty or duty related, must be offset by the amount of workers' compensation paid. Instead, we held that the offset applied to *all nonduty* related disability pensions but did not apply to duty disabled retirants who retire after attaining age 55.

At the time plaintiffs received their lump-sum retroactive workers' compensation payments, plaintiffs were nonduty disabled retirants drawing nonduty disability pensions under § 122.1 of the ordinance. As such, pursuant to *Bannan, supra,* they were subject to the offset provisions of § 129. Therefore, the city (which apparently distributed the lump sums inadvertently), properly sought

reimbursement and should have been reimbursed unless (1) under § 821(1) of the Worker's Disability Compensation Act, the obligation constituted a "debt" which the city could not touch, or (2) the board improperly denied plaintiffs' application for duty disability status. We consider those questions separately.

At the time this action was instituted, § 821(1) of the Worker's Disability Compensation Act, MCL 418.821(1); MSA 17.237(821)(1), read:

"No payment under this act shall be assignable or subject to attachment or garnishment *or be held liable in any way for any debts.* In case of insolvency every liability for compensation under this act shall constitute a first lien upon all the property of the employer liable therefor, paramount to all other claims or liens except for wages and taxes which lien shall be enforced by order of the court." (Emphasis added.)

We find no case directly on point and, thus, the question raised is of first impression. However, the clear language of the statute refers to obligations owed to third parties to whom the recipient of the workers' compensation benefits is already in debt. The statute was obviously designed to shield workers from claims of third-party creditors to whom the injured worker was then indebted. It does not refer to the unique situation involved herein, where the distribution of benefits itself creates the alleged "debt". Plaintiffs had not assigned the payments received to third-party creditors nor had the city sued, attached, garnisheed, or otherwise seized the payments for obligations due the city by plaintiffs. Therefore, we hold that the trial court erred in holding that defendant board improperly demanded and improperly received repayment of the sums of $15,002.30 and $10,522.65.

This brings us to the second question involved. Did the trial court err in holding that plaintiffs were so clearly and patently entitled to duty disability status that mandamus could be issued by the court ordering defendant to approve plaintiffs' applications for duty disability retirement status?

The basis for the trial court's grant of mandamus was the trial court's conclusion that the tests governing entitlement to workers' compensation benefits and pension benefits under the ordinance were the same. The identical argument was made and rejected by one of the four plaintiffs in *Bannan v City of Saginaw, supra.* In that case, the same trial court as is involved here issued a writ of mandamus ordering the City of Saginaw to approve plaintiff Giffin's petition for duty disability status. The trial court reasoned that if an applicant is awarded workers' compensation benefits, the applicant automatically qualified for duty disability retirement benefits. This Court disagreed saying:

"There is no mandate in that section for the board to apply the decision of the separate administrative agency deciding Giffin's workers' compensation claim. Furthermore, the standards under § 123 and the WDCA are not precisely the same.

\* \* \*

"The trial court seems to have assumed that if the applicant draws workers' compensation, the applicant automatically qualifies for duty-disability retirement. However, § 122 of Ordinance D, by its express reference to § 129, contemplates that nonduty disability retirees may receive workers' compensation benefits. It is then up to the board to determine whether an employee drawing workers' compensation benefits falls within the §§ 121-122 nonduty disability or § 124 duty-disability provisions of the ordinance." *Bannan,* p 326.

Section 123 of the city's pension ordinance speaks in terms of proximate cause.[2] The Supreme Court has disavowed the proximate cause test for workers' compensation eligibility. *Whetro v Awkerman,* 383 Mich 235, 241; 174 NW2d 783 (1970). To be eligible for workers' compensation benefits, a claimant must show his disability "arose out of and in the course of employment" and that the employment aggravated, accelerated, or combined with the disease to produce the disability. *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 25-33; 268 NW2d 1 (1978). Plaintiff Braun was totally disabled by reason of his mental disorder. *Deziel, supra,* rejected the proximate cause test for mental disorders. In summary, we find that under § 123 the city may impose a stricter standard for an award of duty disability benefits than is applied for workers' compensation benefits. Thus, mandamus ordering plaintiffs to be classified for duty disability should not have been issued.

Plaintiffs claim that the board acted capriciously and arbitrarily at the meeting on April 10, 1978, when it voted to receive and file the applications. According to plaintiffs, the action of "receiving and filing" was a subterfuge to avoid a clear decision on the merits. A similar procedure was followed as to plaintiff Giffin in *Bannan v City of Saginaw, supra.* There defendant board reviewed the evidence submitted by Giffin before voting to "receive and file" Giffin's application for reconsideration. There, as here, plaintiff's counsel claimed

---

[2] "If the medical committee certifies to the board, by majority opinion, that such member is physically or mentally totally incapacitated for duty as a policeman or fireman in the employ of the city, and the board finds the *disability to have occurred as the natural and proximate result of causes arising out of and in the course of employment with the city,* such member shall be retired by the board upon written application filed with the board by said member or his department head. Upon his retirement he shall be entitled to a pension provided in Section 124." (Emphasis added.)

the board's action was capricious and arbitrary. This Court rejected that claim on grounds that prior to voting to receive and file, the board carefully reviewed the several medical reports, affidavits, and data submitted by counsel.

Similarly, in the instant case, prior to voting to receive and file, the board reviewed both the medical reports, laboratory studies, and relevant evidence initially considered when plaintiffs were granted nonduty disability status and the updated evidence submitted by plaintiffs' counsel on January 18, 1978. Far from acting arbitrarily and capriciously, plaintiffs were allowed to present evidence in their behalf and were represented before the board at the January 18, 1978 meeting. Accordingly, consistent with our holding in *Bannan, supra,* we find the board did not act capriciously and arbitrarily in the instant case.

In summary, as to Part I of this opinion, we hold that the trial court erred in awarding to plaintiffs the sums of money plaintiffs had returned to the city and in ordering defendant to accord plaintiffs the status of duty disability retirants. The judgments entered to said effect are set aside and vacated.

## II

Plaintiffs have cross-appealed that part of the trial court's opinion which holds in effect that although defendant must return to Braun and Pendell the sums of $15,002.30 and $10,522.65, respectively, defendant may still seek reimbursement from other sources, including withholding sums due plaintiffs on their ongoing retirement benefits. As noted earlier, that portion of the trial court's opinion was never reduced to judgment.

Normally, a court speaks through its judgments—"mere opinions are not reviewable". *Michigamme Oil Co v Huron Valley Building & Savings Ass'n,* 280 Mich 12, 15; 273 NW 329 (1937). Thus, on sound procedural grounds the issue is not before us.

Quite apart from the technical ground for not addressing the issue, sound policy exists for no appellate review. Plaintiffs have paid the sums involved to defendant and we have held that defendant need not tender such sums back to plaintiffs. Thus, the board has been paid in full and has no need to seek reimbursement through other sources. In short, the issue is moot.

The judgments entered in favor of plaintiffs are vacated and set aside. No costs, questions of public interest being involved.